UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ALFREDO J. SARARO, III and
CHRISTOPHER J. SARARO,

    Plaintiffs,

v.                                                CASE NO: 2:11-CV-31-UA-DNF

U. S. BANK NATIONAL ASSOCIATION,
as assignee of Capital One, N.A. as
assignee of Chevy Chase, FSB,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. #33), and Plaintiffs' Response (Dkt. #34). Upon review of the pleadings, the Court concludes that the Motion should be denied. But Plaintiffs are strongly cautioned not to make allegations which a reasonable investigation would show to be unsupportable. Otherwise, Rule 11 sanctions may be applied. The Court gives these warnings about Rule 11 sanctions because Plaintiffs' Third Amended Complaint is heavy on conclusory allegations and light on factual ones.

Plaintiffs claim Chevy Chase, FSB committed fraud and misrepresentation in "the fall" of 2005. Paragraph 11 alleges that David Calvery, a Chevy Chase employee, offered to make them a "mortgage loan of $1,360,500.00 at an initial rate of 1.5% payable monthly

at $3,669.76 for the first year, and guaranteed that over the next five years the mortgage payment would never exceed $4,558.93 per month." It appears from the allegations of the Complaint that the loan in question was in fact made by Chevy Chase on the terms described.

The Complaint then alleges that three years later, in December of 2008, Plaintiffs were informed by Chevy Chase that their new monthly payment would increase to $9,700 per month. Taking this allegation as true together with the prior allegation that the payment could not exceed $4,558.93 for the first five years, the Complaint seems to allege a breach of contract, but not a fraud in the inducement claim. Statements made three years after the inception of the loan do not constitute fraud in the inducement. And Chevy Chase and its assigns are bound by the written terms of the loan agreement, not by what someone says over the telephone.

The Complaint next alleges that this increase in monthly payment was occasioned, not by the terms of the promissory note, but the drastic decline of real estate values in southwest Florida. Plaintiffs do not point to any language in the note and mortgage that would allow the holder to adjust the payments due to a fluctuating real estate market.

In keeping with the prior questionable allegations, the Complaint then, in paragraph 17, asserts that the Plaintiffs "requested and received two appraisals from Netco Title Company," in February of 2009. The Complaint neither identifies Netco Title Company, nor states what party it represented, but does say that the appraisals indicate that the property was appraised in September of 2005 for $2,200,000 and in October of 2005 for $2,250,000. The Complaint does not say who prepared the appraisals nor for whom they were prepared. It

at $3,669.76 for the first year, and guaranteed that over the next five years the mortgage payment would never exceed $4,558.93 per month." It appears from the allegations of the Complaint that the loan in question was in fact made by Chevy Chase on the terms described.

The Complaint then alleges that three years later, in December of 2008, Plaintiffs were informed by Chevy Chase that their new monthly payment would increase to $9,700 per month. Taking this allegation as true together with the prior allegation that the payment could not exceed $4,558.93 for the first five years, the Complaint seems to allege a breach of contract, but not a fraud in the inducement claim. Statements made three years after the inception of the loan do not constitute fraud in the inducement. And Chevy Chase and its assigns are bound by the written terms of the loan agreement, not by what someone says over the telephone.

The Complaint next alleges that this increase in monthly payment was occasioned, not by the terms of the promissory note, but the drastic decline of real estate values in southwest Florida. Plaintiffs do not point to any language in the note and mortgage that would allow the holder to adjust the payments due to a fluctuating real estate market.

In keeping with the prior questionable allegations, the Complaint then, in paragraph 17, asserts that the Plaintiffs "requested and received two appraisals from Netco Title Company," in February of 2009. The Complaint neither identifies Netco Title Company, nor states what party it represented, but does say that the appraisals indicate that the property was appraised in September of 2005 for $2,200,000 and in October of 2005 for $2,250,000. The Complaint does not say who prepared the appraisals nor for whom they were prepared. It

merely asserts that the "appraisals were false and greatly exaggerated and Chevy Chase FSB knew that these appraisals were in fact false in October of 2005." The Complaint then alleges that Chevy Chase used the false appraisals "to induce" the Plaintiffs to purchase the condominium unit in question.

The potential problems of this scenario are obvious. A lender does not normally induce a borrower to buy a particular piece of real estate. And appraisals are normally made for the benefit of the lender, not the borrower. (That is why these appraisals are generally not even disclosed to a borrower, and the Defendant here has cited many cases to that effect.) Of course, a borrower is entitled to obtain his or her own appraisal if they have any question about the value of the property they are intending to purchase.

After having made these allegations of fraud on the part of Chevy Chase, Plaintiffs follow with the general conclusory statements that Chevy Chase was purchased by and merged into Capital One, and that Capital One was subsequently purchased by and merged into U. S. Bank National Association, the Defendant here. It is because of the successor liability from these alleged mergers that Plaintiffs assert as the basis to support this action against U. S. Bank. Defendant counters this claim by stating it purchased the loan on the secondary market.

In sum, the Third Amended Complaint for the most part is vague and conclusory, but it does set forth allegations that (with enough advice from the defense) eventually could be sufficient to withstand a motion to dismiss. Rather than prolong the inevitable, the Court will deny the Motion to Dismiss. The arguments made in the Defendant's Motion (Dkt. #33) may

merely asserts that the "appraisals were false and greatly exaggerated and Chevy Chase FSB knew that these appraisals were in fact false in October of 2005." The Complaint then alleges that Chevy Chase used the false appraisals "to induce" the Plaintiffs to purchase the condominium unit in question.

The potential problems of this scenario are obvious. A lender does not normally induce a borrower to buy a particular piece of real estate. And appraisals are normally made for the benefit of the lender, not the borrower. (That is why these appraisals are generally not even disclosed to a borrower, and the Defendant here has cited many cases to that effect.) Of course, a borrower is entitled to obtain his or her own appraisal if they have any question about the value of the property they are intending to purchase.

After having made these allegations of fraud on the part of Chevy Chase, Plaintiffs follow with the general conclusory statements that Chevy Chase was purchased by and merged into Capital One, and that Capital One was subsequently purchased by and merged into U. S. Bank National Association, the Defendant here. It is because of the successor liability from these alleged mergers that Plaintiffs assert as the basis to support this action against U. S. Bank. Defendant counters this claim by stating it purchased the loan on the secondary market.

In sum, the Third Amended Complaint for the most part is vague and conclusory, but it does set forth allegations that (with enough advice from the defense) eventually could be sufficient to withstand a motion to dismiss. Rather than prolong the inevitable, the Court will deny the Motion to Dismiss. The arguments made in the Defendant's Motion (Dkt. #33) may

be raised at the summary judgment stage. If at that point the allegations are shown to be without support, Rule 11 sanctions may follow.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. #33) is hereby DENIED.

2. The Defendant shall answer the Third Amended Complaint within twenty (20) days.

**DONE** and **ORDERED** in Tampa, Florida on June 22, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

*S:\Even\2011\11-cv-31.Ft Myers mtd 33.wpd*